EGGLESTON v. RUMBLE.

*(Supreme Court, General Term, First Department.* November 18, 1892.)

GAMING—STOCK CONTRACTS—AGREEMENT TO PAY DIFFERENCES.

A stockbroker contracted to purchase stock for his customer at an agreed price, and to sell the same, if the customer so directed, at the highest price announced by the phonograph, and to pay the customer in that case the difference, less his commission. The customer signed a written order, paid part of the purchase price, and, when the purchase was effected, agreed to leave the stock with the broker till paid for, and directed him to sell if the price reached a given figure. *Held,* that the contract was for the sale and delivery of the shares, and not simply to pay differences.

Case submitted on agreed statement.

Action by Francis Eggleston against George W. Rumble, a stockbroker, to recover a deposit made on a contract for the purchase of stock. Judgment for defendant.

Argued before VAN BRUNT, P. J., and O'BRIEN and BARRETT, JJ.

*William H. Reed,* for plaintiff.   *Palmer, Boothby & Warren,* for defendant.

BARRETT, J. · The plaintiff claims the return of $800, which he gave to the defendant to be applied upon the purchase of certain shares of stock. The claim is based upon the theory that the transaction was in the nature of a bet or wager; but there is nothing in the agreed statement of facts to sustain the plaintiff's contention, nor to justify the vituperation with which his brief abounds.   The defendant had an office in this city, in which he was carrying on the business of buying and selling mining stocks.   In that office there was an instrument called a "phonograph," which announced the prices and fluctuations of the stocks in which the defendant dealt.   The defendant informed the plaintiff that (we quote from the agreed case) "the owners of these stocks dictated to a phonograph at their office the prices at which they were buying or selling" such securities, and then sent the cylinder to him, "accompanied by the certificates of stock that they would sell at the price they had dictated upon such cylinder."   The defendant also told the plaintiff (to quote again from the agreed case) that, "if he (Eggleston) purchased any of these stocks, and the prices should thereafter be announced by the phonograph at a higher figure than the price at which he might buy them, he (Rumble) would sell any stocks that Eggleston had bought, if Eggleston so directed, at·the highest price that should be announced by the phonograph, and would pay Eggleston the difference in cash, less one quarter of 1 per cent. for his commissions as a broker."   Thereupon the plaintiff gave the defendant an order to buy 8,000 shares of Maple mining stock at 90 cents per share.   This order was in writing.   Accompanying its delivery, the plaintiff gave the defendant $800, to be applied upon account of the purchase.   Upon the same day the defendant notified the plaintiff in writing that he had executed the order, and he also told him that the stock was ready for delivery.   Plaintiff replied that he had not money enough to pay for the shares, but that he would leave them with the defendant until he paid him.   He then directed the defendant to sell the stock if the price should ·advance to 98 cents per share.   The stock advanced, however, to but 96 cents per share.   It then declined to 84 cents, and subsequently to 79 cents, per share.   Thereupon the plaintiff demanded the return of the $800, which the defendant refused, but said he was ready to deliver the shares upon payment of the balance of the purchase price.   All this may have been, as the plaintiff vehemently insists, a device to evade the statute, but such a conclusion cannot be drawn merely from a peculiar or unusual method of transacting business.   Upon the facts before us, the transaction was apparently legitimate, and we cannot judicially infer the contrary upon mere suspicion.   *Story* v. *Salomon,* 71 N. Y. 422.   The plaintiff seems to attribute to us powers of divination, and seeks the exercise of such powers, rather than the application of the rules of law to unambiguous facts.   It is not of the slightest consequence whether· the quotations for these stocks came to the defendant through a phonograph, or through what is called a "ticker," or by means of written communications from the owners.   The order was to purchase at 90 cents, and such order was duly executed.   The subsequent order was to sell when the stock was quoted (in the manner agreed upon) at 98 cents.   It has not been quoted at 98 cents per share, and consequently the defendant has not been able to execute the order.   He thus holds the shares for his principal, and is ready and willing to deliver them to such principal upon payment of the balance of the purchase money.   At that point the plaintiff neither offers such balance, nor directs the defendant to sell the shares at the actual quotations.   Upon no principle other than the inherent illegality of the· entire transaction can he ignore the defendant's rights and his own obligation, and demand a return of the sum paid upon

account.  The burden of establishing such illegality was upon him, and that burden has not been met.  We find no fact in the agreed case which would justify the conclusion that the intent was not to take or deliver the shares, but simply to pay differences.  Still less is there any statement of fact which raises even an inference of actual cheating.  It follows that there should be judgment for the defendant, with costs.  All concur.